UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

BRANDI TUCKER-MCINTYRE
o/b/o J.T.,                              1:19-cv-10549-NLH

              Plaintiff,      **OPINION**

v.

COMMISSIONER OF SOCIAL
SECURITY,
              Defendant.

---

**APPEARANCES:**

ROBERT ANTHONY PETRUZZELLI
JACOBS, SCHWALBE & PETRUZZELLI, PC
WOODCREST PAVILION
TEN MELROSE AVENUE
SUITE 340
CHERRY HILL, NJ 08003

    *On behalf of Plaintiff*

MELISSA KAY CURRY
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of J.T., Plaintiff's minor son, for Supplemental Security Income ("SSI") under Title XVI of

the Social Security Act.  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that J.T. was not disabled as of October 1, 2014.  For the reasons stated below, this Court will reverse that decision and remand the matter for further proceedings.

I.     BACKGROUND AND PROCEDURAL HISTORY

On April 1, 2015, Plaintiff, Brandi Tucker-Mcintyre, filed an application for child SSI benefits for her minor son, J.T., who was born in 2007.  Plaintiff claimed that J.T. became disabled on October 1, 2014 due to attention deficient disorder.

After Plaintiff's claim was denied initially and upon reconsideration, on April 5, 2016, Plaintiff requested a hearing before an ALJ.  The ALJ dismissed Plaintiff's hearing request as untimely, but the Appeals Council remanded the matter to the ALJ for a hearing, which was held on January 30, 2018.  The ALJ issued an unfavorable decision on May 16, 2018.  Throughout the process, Plaintiff proceeded *pro se* without the assistance of legal counsel or a non-attorney representative.

Plaintiff obtained legal counsel at the Appeals Council level.  There, in Plaintiff's Request for Review of Hearing Decision, counsel requested that the Appeals Council consider additional evidence not considered by the ALJ.  The Appeals Council declined to enter the supplemental submissions into

2

evidence, and it denied Plaintiff's Request for Review on February 26, 2019, thus making the ALJ's decision final. Plaintiff brings this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its

3

totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'"  Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches

4

> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

    **B.**    **Standard for a Child's Claim for SSI**

The Federal Supplemental Security Income program provides benefits to disabled individuals who meet certain statutory income and resource limitations.  42 U.S.C. § 1381.  The statute provides that a child under 18

> shall be considered disabled for the purposes of this
> subchapter if that individual has a medically determinable
> physical or mental impairment, which results in marked and
> severe functional limitations, and which can be expected to

5

>     result in death or which has lasted or can be expected to
>     last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner's regulations require a three-step analysis to determine whether a child is disabled: (1) that the child is not working; (2) that the child had a "severe" impairment or combination of impairments; and (3) that the impairment, or combination of impairments, was of Listing-level severity, meaning the impairment or impairments met, medically equaled or functionally equaled the severity of an impairment in the Listings.  20 C.F.R. § 416.924(a).

The regulations provide that functional equivalence to the severity of an impairment in the Listings may be determined based on domains of functioning.  20 C.F.R. § 416.926a.  A medically determinable impairment or combination of impairments functionally equals a listed impairment if it "result[s] in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."  Id. § 416.926a(a).

A child's functional limitations are considered in terms of six domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being."  Id. § 416.926a(b)(1).  A limitation is "marked" when it

6

"interferes seriously with your ability to independently initiate, sustain, or complete activities" and marked means "more than moderate but less than extreme."  Id. § 416.926a(e)(2)(i).

### C.  Analysis

In this case, the ALJ found at step one that J.T. was not working.  At step two, the ALJ found that J.T. had the severe impairments of organic mental disorder and ADHD.  At step three, the ALJ found that J.T.'s impairments were not of Listing-level severity.  Specifically, the ALJ found the following with respect to the six domains:

(1) Acquiring and using information - less than marked limitation;

(2) Attending and completing tasks - marked limitation;

(3) Interacting and relating with others - less than marked limitation;

(4) Moving about and manipulating objects - less than marked limitation;

(5) Caring for yourself - less than marked limitation; and

(6) Health and physical well-being - no limitation.

Because the ALJ did not find that J.T. had marked limitations in two domains, the ALJ concluded that J.T. was not disabled.

Plaintiff argues that this conclusion was in error.

7

Primarily, Plaintiff argues that the ALJ violated her duty to develop the record, especially because she was proceeding *pro se*, and the matter should be remanded for a reassessment of all relevant evidence the ALJ should have considered. This Court agrees with Plaintiff.

Even though a claimant does not have a constitutional right to counsel at a Social Security disability hearing, claimants are permitted to bring counsel to their hearings. Vivaritas v. Comm'r of Soc. Sec., 264 F. App'x 155, 157 (3d Cir. 2008) (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1705). Counsel may be useful in assisting a claimant, but "[a] lack of counsel, itself, is not sufficient cause for remand." Bentley v. Comm'r of Soc. Sec., 2011 WL 4594290, at *9 (D.N.J. 2011).

An ALJ, however, must ensure that claimants are given notice of their right to bring counsel and claimants must waive their right knowingly and intelligently. Vivaritas, 264 F. App'x at 157-58 (citing Smith v. Schweiker, 677 F.2d 826, 828 (11th Cir. 1982)); see also Yakley v. Astrue, 2013 WL 1010671, at *4 (D.N.J. 2013) (noting that the Third Circuit has acknowledged the Seventh Circuit's "knowingly and intelligently" test without explicitly adopting it). There is no rigid protocol an ALJ must follow when obtaining this waiver. McGrew v. Colvin, 2013 WL 2948448, at *5 (D.N.J. 2013) (citing Vivaritas, 264 F. App'x at 158 n.1).

8

With regard to the ALJ's duty to develop the record, an ALJ has "a duty to develop a full and fair record in social security cases," and "an ALJ must secure relevant information regarding a claimant's entitlement to social security benefits." Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) (citations omitted). The reason for this duty is that "[a]lthough the burden is upon the claimant to prove his disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails." Id. (citation omitted).

Where a claimant proceeds without counsel, the ALJ has a heightened duty to assist the claimant in developing the administrative record and "must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," because a claimant unrepresented by counsel is not presumed to have made his or her best case before the ALJ. Morris v. Commissioner of Social Security, 2018 WL 395736, at *4 (D.N.J. 2018) (quoting Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003) (internal quotation marks omitted)).

Here, the Court's review of the hearing transcript shows that the ALJ satisfied her obligation to ensure that Plaintiff knowingly and intelligently waived her right to counsel at the hearing. (R. at 71-71.) The ALJ failed, however, to ensure

9

that a full and fair record was obtained and considered prior to the ALJ issuing her decision.

Plaintiff applied for benefits for J.T. on April 1, 2015, claiming that that J.T. became disabled on October 1, 2014. J.T. was in second grade in 2014-2015, third grade in 2015-2016, fourth grade in 2016-2017, and fifth grade in 2017-2018.  The hearing before the ALJ was held on January 30, 2018, almost five months into J.T.'s fifth grade year.

At the hearing, the ALJ explained to Plaintiff that because she was proceeding *pro se*, it was the ALJ's duty to "collect the records" for Plaintiff.  (R. at 72.)  After speaking with J.T., the ALJ then asked Plaintiff questions relating to the six domains.  Plaintiff stated that J.T. underwent testing in second grade, and his first IEP was implemented in third grade.

On the issue of acquiring and using information, Plaintiff testified that J.T., who was currently in fifth grade, was one grade level behind.  Plaintiff also testified that even though J.T. obtained Bs and was on the honor roll in fourth grade, this current year he was struggling more, and he was receiving all Cs.  (R. at 76-77.)  Regarding interacting and relating to others, Plaintiff testified that already during the current school year, J.T. had been suspended three different times - once in September and twice in October - for "punching his classmates in the face," and in the past three weeks, J.T.

10

pushed someone.  (R. at 84.)  Plaintiff provided the ALJ with additional details about J.T. relative to the other four domains.

At the end of the hearing, the ALJ examined what records she had, and requested Plaintiff to provide the counseling records for J.T., leaving the record open for seven days so Plaintiff could do so.  (R. at 101.)  On May 16, 2018, the ALJ issued her decision, denying J.T. benefits because she found that J.T. only suffered from one marked limitation in the domain of attending and completing tasks.

The primary flaw with the ALJ's decision is that she only considered the following records in analyzing each of the six domains:  An April 2015 occupational therapy evaluation (when J.T. was in second grade); an April 2015 teacher questionnaire (when J.T. was in second grade); a July 2015 consultative child disability evaluation (the summer after J.T's second grade year); an October 2015 teacher questionnaire and an October 2015 parent questionnaire (when J.T. was only one month into third grade); a November 2015 consultative child disability evaluation (two months into third grade); and an August 2016 report from J.T.'s counselor (prepared the summer after J.T.'s third grade year).

The Court is perplexed as to why the ALJ relied solely on evidence compiled while J.T. was in second and third grade, and

apparently took no efforts, as she was required, to more fully develop the record and obtain even the most basic evidence - such as J.T.'s IEPs from fourth and fifth grade - to determine whether J.T.'s impairments in the six domains remained static since second and third grade.[1]  The ALJ's failure to gather any records past third grade is particularly confounding because Plaintiff's testimony at the hearing indicated that J.T.'s impairments had not improved but instead had worsened.

Moreover, even though the ALJ related some of Plaintiff's testimony from the hearing in her decision, the ALJ did not parse out Plaintiff's testimony about her son as it related to a specific grade level.  Notably, when discussing the domain of interacting and relating to others, the ALJ recited Plaintiff's testimony that J.T. had punched three classmates in the face on three separate occasions in September and October 2018, was

---

[1] "An IEP consists of a specific statement of a student's present abilities, goals for improvement of the student's abilities, services designed to meet those goals, and a timetable for reaching the goals by way of the services.  A team consisting of the student's parents and teachers, a curriculum specialist from the local school district, and, if requested, a person with special knowledge or expertise regarding the student must develop an IEP.  The IEP team will review the IEP at least annually to determine whether the stated goals for the student are being achieved.  When appropriate the team will revise the IEP to address, among other things, lack of progress, necessary changes arising from reevaluation of the child, and parental input." D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 557 (3d Cir. 2010) (quotations and citations omitted).

suspended on each occasion, and more recently had just pushed a classmate.  But the ALJ only referred to evidence from three years prior to support her conclusion that J.T. suffered a less-than-marked limitation the domain of interacting and relating to others.  (R. at 47.)   The ALJ similarly discounted Plaintiff's January 30, 2018 testimony regarding other domains by referencing evidence prepared in 2015.

The supplemental evidence that Plaintiff's counsel attempted to move into the record before the Appeals Council further demonstrates that such evidence could have been, and should have been, obtained.  That supplemental evidence, like Plaintiff's testimony, also provides further contrast to the records from J.T.'s second and third grade years, which were the only records the ALJ considered.

It is evident that the ALJ did not "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," Reefer, 326 F.3d at 308, in order to support her analysis of the six domains required to determine whether J.T. was disabled and entitled to SSI disability benefits.  As a result, the Court cannot find that substantial evidence supports the ALJ's decision.

The Court does not take any position as to whether the outcome of J.T.'s application for disability benefits would have been different if the ALJ had fulfilled her duty to develop a

13

full and fair record.  The matter must be remanded so that the ALJ may do so now.  See, e.g., Whetstone o/b/o U.W. v. Berryhill, 2017 WL 5047899, at *5 (D.N.J. 2017) ("[T]his is not merely an unrepresented adult, but an unrepresented child, whose case is being pursued by his mother, who of necessity is not regularly present during the school day. . . .  Layered on top of this is the duty of the ALJ to 'scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts' when presented with an unrepresented claimant.  U.W. is now represented by counsel; based on the considerations mentioned above, I believe the record should be supplemented with the aid of an attorney.  I do not direct a result, but whether the ALJ's decision is the same or different, it will have been with the benefit of a skillful presentation on a full record.").

### III. Conclusion

For the reasons expressed above, the ALJ's determination that J.T. is not totally disabled is not supported by substantial evidence.  The decision of the ALJ is reversed and remanded for further proceedings consistent with this Opinion.

An accompanying Order will be issued.


Date: May 1 , 2020                 s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

14